UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

JAMES PAYNE,

                Plaintiff,                          **MEMORANDUM OF DECISION AND ORDER**

   -v.-                                                   03-CV-1929 (DRH)(JO)

COUNTY OF NASSAU, POLICE OFFICER
JEROME APRILE, SHIELD #62, UNIDENTIFIED
NASSAU COUNTY POLICE DEPARTMENT
POLICE OFFICERS, ROSLYN UNION FREE SCHOOL
DISTRICT and UNIDENTIFIED EMPLOYEES OF
THE ROSLYN UNION FREE SCHOOL DISTRICT,

                Defendants.
_____

**Appearances:**

**For the Plaintiff:**
**Thomas G. Sheehan**
Cheda & Sheehan
76-03 Roosevelt Avenue
Jackson Heights, New York 11372

**For the Defendants Nassau County and Police Officer Jerome Aprile:**
**Lorna B. Goodman**
**Nassau County Attorney**
**By: Arianne Reyer**
One West Street
Mineola, New York 11501-4895

**For the Defendant The Roslyn Union Free School District:**
**Lewis R. Silverman**
Rutherford & Christie, LLP
300 East 42nd Street
18th Floor
New York, New York 10017-5947

**HURLEY, District Judge:**

        Presently before the Court are the motions by defendants Nassau County, Police Officer Jerome Aprile ("Aprile") (collectively, the "County Defendants"), and The Roslyn Union

Free School District (the "School District") for summary judgment. For the reasons stated below, the motions are granted in their entirety.

## FACTUAL BACKGROUND

The following facts are undisputed. This case arises out of the arrest of plaintiff James Payne ("Plaintiff") by the Nassau County Police Department on a charge of Aggravated Harassment in the Second Degree on October 18, 2001. At that time, Plaintiff was working as the foreman of the electrical contractor on a construction project at the Roslyn Middle School. (Deposition of James Payne ("Payne Dep."), Ex. E to the Decl. of Lewis Silverman, dated Aug. 20, 2004 ("Silverman Decl."), at 16-17.) The School District retained Turner Construction Company as the construction manager of the project. (County Defs.'s Local Rule 56.1 Statement ¶ 7.) On October 17, 2001, Plaintiff sent a letter via facsimile to another foreman, Peter Segal, on the Middle School grounds. (Letter dated Oct. 17, 2001, Ex. M to Silverman Decl.; Payne Dep. at 23-24.) A copy of the letter was also sent via facsimile to Michael Doyle, an employee of Turner Construction Company. (Payne Dep. at 24.) The letter concluded by stating "I believe that the water in B wing is contaminated with the Anthrax Bacteria." (Letter dated Oct. 17, 2001, Ex. M to Silverman Decl.)

It is significant to note that Plaintiff sent this letter during the midst of the anthrax scare following the September 11 tragedy. (School District's Local Rule 56.1 Statement ¶ 19; County Defs.' Local Rule 56.1 Statement ¶ 28.) Mr. Segal subsequently showed the letter to Thomas Galinski, the School District's Supervisor of Maintenance and Grounds. (Aff. of Thomas Galinski, dated July 23, 2004, ¶ 8.) Mr. Galinski "was immediately upset by the letter and concerned that the letter might cause panic and present a safety problem to students, staff,

2

administration, personnel and others at the middle school or elsewhere in the District" so he called the Nassau County Police Department. (*Id.* ¶¶ 12, 18.)

The police conducted an investigation over several hours, which included examining the letter, interviewing witnesses and interviewing Plaintiff, following which Plaintiff was arrested. (*Id.* ¶ 21; School District's Local Rule 56.1 Statement ¶¶ 31, 36; County Defs.' Local Rule 56.1 Statement ¶¶ 34, 42.) During the course of the investigation, Plaintiff admitted to the Police that he had written the letter and transmitted it via facsimile to Michael Doyle and Peter Segal. (County Defs.' Local Rule 56.1 Statement ¶ 37.) Aprile was the arresting officer. (*Id.* ¶ 42.) The charges were ultimately dismissed after being presented to the Nassau County Grand Jury. (Compl. ¶ 22.)

On April 22, 2003, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of the First, Fourth, and Fourteenth Amendments based upon alleged false arrest, false imprisonment, and malicious prosecution. Plaintiff also asserts state law claims for defamation, negligent hiring and supervision, and intentional infliction of emotional distress. Plaintiff admits to writing and sending the letter, despite the fact that he was aware that anthrax was a fear among the general population at that time. (Payne Dep. at 24, 40; *see also* Compl. ¶ 22.) He contends that his statement about anthrax was a joke. (Compl. ¶ 22.)

## PROCEDURAL BACKGROUND

In compliance with this Court's Individual Practice Rules, by letter dated June 15, 2004, the School District requested a pre-motion conference so that it could make a motion for summary judgment. By Order dated July 1, 2004, the Court noted that it had not received any responses from any other party, waived its pre-motion conference requirement, and set a briefing

3

schedule. By letter dated July 19, 2004, the County Defendants requested permission to move for summary judgment and for an extension of the schedule for dispositive motions. On July 20, 2004, the Court granted this application.

Defendants served their motions pursuant to the July 20, 2004 Order in a timely fashion. Although Plaintiff's opposition papers were due to be served on September 20, 2005, Plaintiff failed to serve papers or to contact opposing counsel. Instead, by letter directed to the Court dated September 22, 2004, Plaintiff requested an extension of time until September 27, 2004 to serve opposition papers. In response to Plaintiff's application, Defendants advised the Court that Plaintiff never contacted them to seek an extension and complained generally about Plaintiff's lack of cooperation throughout the entire proceeding, including his failure to provide discovery absent judicial intervention. (*See* Letter from Arianne Reyer, dated Sept. 23, 2005; Letter from Lewis R. Silverman, dated Sept. 23, 2004.) By Order dated September 24, 2004, the Court granted Plaintiff an extension until September 27, 2005 to serve his opposition papers and expressly stated that "no further extensions will be granted. If [Plaintiff's counsel] fails to comply with the Court's order, the Court may consider the Defendants' motion as unopposed." (Sept. 24, 2005 Order.) Plaintiff failed to serve opposition papers by September 27, 2004 or at any time thereafter.

According to the School District, "[d]iscovery, which included the depositions of the plaintiff and three other witnesses, has now concluded. The plaintiff waived the right to conduct depositions and no depositions of the defendants have been conducted." (School District's Mem. at 1.)

**DISCUSSION**

Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986 ); *Wilkinson v. Russell*, 182 F.3d 89, 96-97 (2d Cir. 1999). The Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995); *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). At its core, the Court's function in deciding a motion for summary judgment is "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The Second Circuit, in the seminal case of *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004), addressed the proper analysis that districts courts should employ when presented with an unopposed motion for summary judgment. The court held that "Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles." *Id.* at 242. Thus, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Id.* In addition, "[a]lthough the failure to respond may allow the district court to accept the movant's factual assertions as true, *see* Local Civ. R. 56.2," *id.* at 246, the district court "must be satisfied that the citation to evidence in the record supports the assertion." *Id.* at 244. With these principles in mind, the Court turns to the arguments presented by the defendants.

5

### I.     There is No Evidence to Establish Municipal Liability
###         Against Nassau County and the School District Under Section 1983

A municipality generally cannot be held liable under Section 1983 for the alleged unconstitutional actions of its employees who are below a "policymaking level." That is, municipalities cannot be liable under the *respondeat superior* doctrine for their employees' torts. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, municipalities can generally only be liable for actions taken pursuant to "official municipal policy" that cause constitutional torts. *Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir. 1979) (quoting *Monell*, 436 U.S. at 691). To hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

Municipal policy may also be inferred from the informal acts or omissions of supervisory municipal officials. *Turpin v. Mailet*, 619 F.2d 196, 200 (2d Cir. 1980). Where a municipality has notice of "a pattern of constitutionally offensive acts" by its employees, but fails to take any remedial steps in response, the municipality may be held liable for similar subsequent acts, if the inaction is determined to have been the result of "deliberate indifference" or "tacit authorization" of the offensive acts — in effect, an "unlawful municipal *policy* of ratification of unconstitutional conduct." *Batista*, 702 F.2d at 397 (emphasis added); see also *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Turpin*, 619 F.2d at 201.

However, a single incident involving an employee below the policymaking level will not suffice to support an inference of a municipal custom or policy, *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24

(1985)), at least absent factual allegations "tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). In particular, a complaint alleging that a municipality was "deliberately indifferent" to the need to train, monitor, or supervise an officer, but not alleging any facts beyond the specific instance giving rise to the complaint, generally fails to adequately to plead a custom or policy on the part of the municipality. *Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir. 1993), *abrogated on other grounds as recognized in Hernandez v. Goord*, 312 F. Supp. 2d 537 (S.D.N.Y. 2004); *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987).

Here, the Complaint alleges that Nassau County and the School District "as a matter of policy and practice, have with deliberate indifference failed to adequately discipline, train or otherwise direct police officers and/or employees concerning the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct described above." (Compl. ¶ 48.) The Complaint further alleges a policy of failing to "properly sanction or discipline police officers and/or employees." (*Id.* ¶¶ 49-50.) These general assertions do not amount to a claim of municipal liability. *See Dwares*, 985 F.2d at 100-01 ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury.").

In addition, the record is devoid of any evidence to allow a reasonable trier of fact to conclude that Nassau County or the School District were engaged in policy, practice or custom that would create liability. In that regard, upon the Court's independent review of the record, there is no evidence to substantiate Plaintiff's claims of inappropriate training or supervision of any School District or Nassau County employee. Accordingly, Plaintiff's Section

7

1983 claims against Nassau County and the School District are dismissed.

## II.  Plaintiff's Section 1983 Claims Against Aprile Fail as a Matter of Law

### A.  False Arrest/False Imprisonment

To establish a claim for false arrest under Section 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff. *Id.* Similarly, a claim for wrongful imprisonment cannot succeed where the undisputed facts establish probable cause because it vitiates a required element of this cause of action, viz. that the arrest or confinement be without legal justification. *See Caban v. United States*, 728 F.2d 68, 71 (2d Cir. 1984).

The police have probable cause for an arrest when, at the moment of the arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Courts look to the "totality of the circumstances" in determining whether there is probable cause. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002). The existence of probable cause to arrest may be determined as a matter of law if there is no dispute as to the pertinent events and the knowledge of the arresting officers. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

Here, Plaintiff was charged with Aggravated Harassment in the Second Degree pursuant to section 240.30(1) of the New York Penal Law, which provides as follows:

> A person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another

8

> person, he or she: 1. Either (a) communicates with a person,
> anonymously or otherwise, by telephone, or by telegraph, mail or
> any other form of written communication, in a manner likely to
> cause annoyance or alarm; or (b) causes a communication to be
> initiated by mechanical or electronic means or otherwise with a
> person, anonymously or otherwise, by telephone, or by telegraph,
> mail or any other form of written communication, in a manner
> likely to cause annoyance or alarm.

N.Y. Penal Law § 240.30(1).[1]

In support of their motion, the County Defendants have proffered the affidavits of Aprile and Sergeant Bistany, the police officers on the scene, which indicate that Plaintiff admitted to them that he had written and faxed a letter to Michael Doyle and Peter Segal stating that the water in the B wing was contaminated with the anthrax bacteria. (Aff. of Police Sergeant Bistany, dated Aug. 16, 2004 ("Bistany Aff.") ¶ 7; Aff. of Aprile, dated Aug. 17, 2004 ("Aprile Aff.") ¶ 17.) In addition, the police officers interviewed Mr. Doyle and Mr. Segal, as well as Mr. Galinski, the latter of whom indicated that Plaintiff's letter was taken as a threat and caused alarm to the building maintenance personnel of the school "who were entrusted with protecting the well-being of the children who attend the Middle School." (Aprile Aff. ¶ 13; *see also* Bistany Aff. ¶¶ 9-10.) Aprile further states that after conferring with Sergeant Bistany "and, based [on] the serious and disturbing content of Plaintiff's letter at a time when there was a very real threat of biochemical warfare and the alarm the letter had caused at the construction site to Building Maintenance staff, including Mr. Galinski, Plaintiff was arrested for violation of New York Penal Law Section 240.30(1) Aggravated Harassment in the Second Degree." (Aprile Aff.

---

[1] Although some courts have questioned the constitutionality of section 240.30(1), the Court declines to address this issue as no party has raised it. *See Vives v. City of New York*, 405 F.3d 115, 119 n.7 (2d Cir. 2005) (refusing to address constitutionality of section 240.30(1) because parties did not dispute constitutionality either in District Court or on appeal).

9

¶ 18.)

There is no question that Plaintiff authored and transmitted the letter at issue. Plaintiff's only contention, as far as the Court can gleam, is that the letter was a joke and, therefore, he lacked the requisite intent. It is well established that a "defendant may be presumed to intend the natural and probable consequences of his actions." *People v. Getch*, 50 N.Y.2d 456, 465 (1980). Looking at the totality of the circumstances and the undisputed facts regarding what was known to the police at the time of arrest, the Court finds Aprile had "reasonably trustworthy information . . . sufficient to warrant [the] belief" that Plaintiff sent the letter with the intent to annoy or alarm, especially given the temporal context of these statements, viz. the nationwide anthrax scare. *See United States v. Ullah*, 2003 WL 1396300, No. 02 CR. 899, at *5 (S.D.N.Y. Mar. 20, 2003) ("The anthrax situation was a reality in New York on October 24, 2001, and these incidents must be viewed in that context."); *People v. Goldstein*, 763 N.Y.S.2d 390, 397 (N.Y. App. Term 2003) (finding that defendant's statements, made in December 2001, must be viewed in light of the "frequent anthrax scare"). Thus, the Court finds that the undisputed facts of this case establish probable cause for Plaintiff's arrest. Accordingly, summary judgment is appropriate for Plaintiff's claims of false arrest and false imprisonment.[2]

### B. *Malicious Prosecution*

To state a cause of action for malicious prosecution under Section 1983, a plaintiff must allege: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that

---

[2] The Court recognizes that if Plaintiff sincerely believed that there was anthrax at the Middle School, and communicated that belief to the police officers at the scene, that might affect the probable cause determination. There is nothing in the record, however, to suggest that to be the case. In fact, in his Complaint, Plaintiff explains that his letter was a "joke." (Compl. ¶ 22.) Thus, the Court's finding of probable cause stands.

the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, [ ] (4) that the prosecution was terminated in the plaintiff's favor [and] that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).

The Court has already found that probable cause existed to arrest Plaintiff. There are no facts in the record indicating that defendants became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest. Which is to say, Plaintiff has not alleged, nor is there any evidence in the record to suggest, that the defendants lacked probable cause to believe the proceeding could succeed. Thus, Plaintiff's claim for malicious prosecution must be dismissed. *See Coleman v. City of New York*, 177 F. Supp. 2d 151, 158 (S.D.N.Y. 2001) ("If subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that the charges against the individual were groundless, probable cause would no longer exist."), *aff'd*, 49 Fed. Appx. 342 (2d Cir. 2002); McDermott v. City of New York, 1995 WL 347041, No. 94 Civ. 2145, at *5 (E.D.N.Y. May 30, 1995) (same).

### C. *Qualified Immunity*

Assuming, arguendo, that Aprile did not have probable cause to arrest Plaintiff, he would alternatively be entitled to summary judgment on the basis of qualified immunity. An arresting officer is entitled to qualified immunity from liability if he can establish that he acted with "arguable probable cause." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that

11

probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause." *Id.*

Here, in light of Plaintiff's admission that he wrote and transmitted the letter, together with the sworn statements of the witnesses and the context within which the statements were made, it was objectively reasonable for Aprile to believe there was probable cause to arrest and prosecute Plaintiff. Accordingly, Aprile is entitled to qualified immunity against Plaintiff's Section 1983 claims.

## III. *State Law Claims*

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplement jurisdiction over Plaintiff's state claims. 28 U.S.C. § 1367(c)(3).

## **CONCLUSION**

For the foregoing reasons, the motions by defendants Nassau County, Police Officer Jerome Aprile, and The Roslyn Union Free School District for summary judgment are granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
September 9, 2005

/s
Denis R. Hurley,
United States District Judge